## J. C. WILSON v. BENJAMIN WILLIAMS.

The plaintiff claimed under a patent issued on the 16th of November, 1848. The defendant pleaded the general issue, and the plaintiff introduced his title. The defendant relied on proof of notice of his elder and superior title from the government; that it was a matter of notoriety in the neighborhood of the land in question that it was the headright of Smothers, under whom he claimed, long before the plaintiff's title had its inception; that the plaintiff's vendor had actual notice of the existence of this claim, (the field notes of the plaintiff's survey reciting that it was "a resurvey of a one-third of a league of land surveyed for Archibald Smothers, A. D. 1838 ;") and by proof by the commissioner and chief clerk of the General Land Office, to the effect that the original title of Smothers was an archive of that office prior to the 16th of November, 1848. It cannot be doubted that this evidence was amply sufficient, upon the authority of the cases of Guilbeau v. Mays, and Byrne v. Fagan, to entitle the defendant to a verdict.

It was competent for the plaintiff to rebut this evidence of notice by proving that, in point of fact, the original title was not deposited in the Land Office

until a time subsequent to the date of the plaintiff's patent, and it is no objection to such evidence that the witness, by whom the proof is to be made, was not an officer of the Land Office, if the testimony was not offered for the purpose either of showing what appeared by, nor to contradict the records of that office.

The title produced and relied on in evidence by the defendant, was a grant to him of one-fourth of a league, (included in the survey of the one-third of a league,) anterior to the survey of said one-third of a league. It was competent for the plaintiff to rebut the presumption of notice so far as it arose from the notoriety of the claim in the neighborhood as the headright of Smothers, the statements to that effect of third persons, and the third of a league survey of 1838, by showing that such notice referred to the survey made of the third of a league; and to show that it was "worthless and invalid. Therefore, it was erroneous to exclude the certificate and field notes of the survey of the third of a league for Smothers in 1838.

If the locator, however, knew of the existence of the elder title, it is immaterial in what manner he obtained the information, he acquired no right by his location as against the holder of that title. The deposit of the title in the General Land Office prior to the acquisition of his right, is such constructive notice as cannot be rebutted. It raises a conclusive legal presumption of notice.

It has been said it will be a sufficient answer in all cases to the allegation of notice, to show that the party to be affected by it, could not have obtained the necessary information by an investigation conducted in the usual course of business. And even where circumstances are brought home to the knowledge of the party, which would have been sufficient in themselves to put him on inquiry, and thus amount to notice, he will be entitled to rebut the presumption of notice, which would otherwise arise, by showing the existence of other attendant circumstances of a nature to satisfy the mind that further inquiry was unnecessary.

The keepers of the records of the General Land Office are the proper persons to depose to facts which relate to the examination for documents belonging to the office ; and not others who are supposed not to have equal means of information.

So much of the depositions of a witness, not the keeper of the records, as may be objected to for the above reason, may. on motion, be suppressed ; but that objection to a part will not authorize the exclusion of the whole.

It is not error to exclude the declarations of the vendor to impeach the title of his vendee, who is not shown to have had notice of them.

APPEAL from Lavaca. Tried below before the Hon. Fielding Jones.

This was an action of trespass to try title brought by J. C.

Wilson against Benjamin Williams, for the recovery of a third of a league of land. The defendant pleaded the general issue.

The plaintiff introduced a patent to the land sued for, issued on the 16th day of November, 1848, to John James, assignee of John M. Sowell, and the *mesne* conveyances from the patentee to himself.

The defendant introduced a title issued by the commissioner of DeLeon's colony on the 27th day of March, 1835, to Archibald Smothers, to one-fourth of a league of land, with the *mesne* conveyances from the heirs of the grantee, to the defendant. The conveyance from William Smothers (who claimed in right of heir in his own right, and as purchaser of the interests of the other heirs,) was made of the said one-fourth of a league, and was executed on the 29th day of January, 1857. The defendant read in evidence the field notes of the survey made for John James on the 1st day of November, 1847, on which the patent was issued ; the field notes recited that "said survey is a resurvey of one-third of a league of land surveyed for Archibald Smothers, A. D. 1838."

A witness in behalf of the defendant, who has lived within six or eight miles of the land, and at the trial, Fall Term, 1858, was about twenty-eight years of age, stated that from his earliest recollection he has known the land called the " cane patch," and has heard that it belonged to A. Smothers ; and, so far as he has heard, it was called A. Smothers' headright, and it was generally known in the community that it included the cane patch. It was proved that the " cane patch " was a place of notoriety, it being the only one in that part of the country. Another witness testified that he had known the land since 1841. Until 1848 there were but few persons resident near the land—none nearer than seven or eight miles. Had seen one of the marked lines ; that it was called Smothers' headright, but did not know whether it was reputed to be granted to, or only surveyed for him. He also stated that it was notorious from the time he came to the country that it was the headright of A. Smothers. He had advised one Threadgill, in the year 1847, not to locate upon it for that reason. Threadgill exhibited a knowledge of the general repute on that

subject, but said that the title had not been perfected, and the land was, therefore, subject to location.

Another witness testified that, from the time that he had come to the country, he had heard that the "cane patch" was A. Smothers' headright. That the land was generally called A. Smothers' headright. The witness stated that he was here in 1838 on a visit, and several times since, until he moved here in 1842.

Alexander Hilliard, surveyor for the Gonzales land district, testified in behalf of the plaintiff that at the time of the location and survey of the Sowell one-third of a league certificate, the records of his office show no other evidence of claim by A. Smothers than the field notes of a survey made for him of the land claimed by the plaintiff by virtue of certificate No. 20, issued by the board of commissioners for Gonzales county, on the 8th day of June, 1838.

The plaintiff proved by F. Chenault, clerk of the County Court of Gonzales county, that the only evidence of claim by A. Smothers to the land in controversy, which he is able to find, from an examination of the records of his office, is the name of A. Smothers upon the old county map. And also proved by the commissioner and chief clerk of the General Land Office, that prior to the 16th of November, 1848, there was on file in the General Land Office the title for one-fourth of a league heretofore referred to. They suppose that the title was not delineated on the map because it gives no connection with any others, and gives no locality known to that office. The commissioner states that the date of the deposit of the title is not shown by any archive in his office, but must have been there before the 10th of November, 1848. The field notes of the patent and of the title to Smothers embrace certain calls which are common to both. A sketch made by him and attached to the depositions, he states, is much the same as the field notes of the John N. Sowell survey; the one being a square one-third, and the other an oblong one-fourth of a league.

The chief clerk stated, that on the old maps of the office, viz., a a map of Gonzales county, constructed from the records of the county surveyor's office, August 1, 1838, and on a map without a date, but apparently a still older one, the name of Archibald

Smothers appears on the survey patented to James as assignee of Sowell. That the name also appeared at the time the patent issues on a map drawn in the General Land Office in 1842: the survey represented in the title does not agree either in shape or quantity with that represented on the map above stated; the former shows an oblong survey of one-fourth league, while the maps all show a square one-third league survey. Also, that it is not marked on any of the maps as a *titled claim*, but as 1st or 2d class headright. That at the time of patenting, the title to Smothers was not regarded in the land office as being on any of the maps. That the patent issued, as he supposed, under the impression of the officers, that the survey represented on the map was made under the headright certificate of said Smothers, issued in Gonzales county, which, not being recommended, the survey was disregarded.

The plaintiff offered to read the depositions of A. H. Phillips, with the report of the committee of the Senate of the State legislature referred to by said Phillips, who was the chairman of the committee, in his said depositions; which report purported to be the result of an examination by that committee, of the archives of Martin de Leon's colony, then deposited in the office of the Secretary of State, but subsequently, and at the time of taking the depositions, removed to and among archives of the General Land Office. The report set forth a list of the documents, contracts, decrees, laws, &c., relative to de Leon's colony contract, with the titles granted to colonists, as contained in the several packages thus examined, among which is included that of Archibald Smothers for one-fourth of a league of land, which, with some few others, they reported as not being on the map. The committee recommended that the documents be deposited in the General Land Office.

The depositions of Phillips proved that the documents aforesaid, or the archives of Martin de Leon's colony, after the death of the empresario, had been deposited in the office of the Secretary of State; that the Commissioner of the land office had declined to receive them, and were not deposited in the latter office until after the passage of the law of the 8th of February, 1850, requiring them to be placed there.

Wilson v. Williams.

The witness further deposed, that there was no evidence in the General Land Office in Feb., 1850, of a headright grant of one-fourth of a league to Archibald Smothers that he could find; that as a member of the committee, he had examined that office in 1850, in order to discover what could be found there that corresponded to the titles and papers among the archives aforesaid; that he was never an officer of the General Land Office.

To the reading of the report or the depositions the defendant objected; that the testimony of the officers of the General Land Office was better evidence, and should be first produced; and that the witness had not been an officer of that office. The objections were sustained, and the evidence excluded.

The plaintiff offered in evidence, a certified copy of the order made by the board of land commissioners of Gonzales county on the 3d day of February, 1838, as follows:

"No. 20. Archibald Smothers applied to the board of land commissioners, and took the oath prescribed by the 12th section of the act granting land to colonists, and, also, proved by two good and lawful witnesses, to wit, Henry Bridges and Richard Hath, that he emigrated to this republic in the year 1829, and that he is a single man; therefore, said board granted to him a certificate for one-third of a league of land as his headright." Also, the certificate of the clerk of the County Court of Gonzales county, that the above described certificate was not recommended as a genuine claim against the government by the traveling board of commissioners, appointed under an act of congress of the republic, passed January 29th, 1840, as appears from the records of the report of said commissioners in his office. Also, the field-notes of a survey made for said Smothers for one-third of a league, by virtue of said certificate. The calls indicated that the survey was made of the same tract described in the plaintiff's petition. To the reading of all which the defendant objected, because the testimony offered was not pertinent to the issue; which objection was sustained, and the evidence was excluded.

The plaintiff offered to prove by Greenwood, that William Smothers, in 1849, and before that time, had stated that Archibald Smothers had not perfected his claim to the land in suit; and

that neither William Smothers, nor any of the heirs of Archibald Smothers, knew, until 1851, that a grant had been issued in 1835; which was objected to by the defendant. The objection was sustained, and the evidence was excluded.

The court charged the jury, that if they believed, from the testimony, that the plaintiff, and those under whom he claims, had notice of the claim of the defendant; or that the claim of the defendant was notorious in the neighborhood where the land was situated, they should find for the defendant, his being the older and superior title. But if they believed the defendant's claim was not any where placed upon the records, either in the county where the land lies or in the General Land Office, or that it was not delineated upon any map either in the county or the General Land Office; and that the plaintiff, and those under whom he claims, had no notice of defendant's claim, then they should find for the plaintiff.

Verdict and judgment for the defendant. The plaintiff filed a motion for a new trial, which was overruled.

*R. L. Foard*, for the appellant.

*Holt & Tevis*, for the appellee. — The foregoing statement of facts present all the material points in the evidence submitted to the jury. From those facts, can the verdict of the jury be sustained?

It is true that the grant was not recorded in the county in strict accordance with the requirements of the registration laws. The registration of a deed in accordance with their provisions does not in any respect affect the title; the only effect is to give notice of the existence of the instrument, and bind parties by its terms and conditions. It is but one mode by which notice may be given, and if notice is in any other manner brought home to the parties dealing with the property, they are as much bound by such notice as if the deed or evidence of title had been recorded.

A party in possession with an unrecorded deed will hold against the subsequent purchaser. In short, the rule is well understood to be that if the purchaser has such notice of the right of parties

as would put a prudent man on enquiry, and it should further appear that upon such enquiry the purchasers might have discovered the true state of the title, he will be bound by such notice.

The testimony as understood in this case establishes the fact that the grant to Smothers was on file in the General Land Office at the time the patent was issued to the plaintiff; that there was no file mark on the papers, or that the land was not delineated on the maps, was not in consequence of any neglect of the defendant or those under whom he claims. It was a failure of the officers of the government to discharge a duty required of them by law, and the defendant should not be held responsible for their neglect.

But it does appear from the testimony that the land was delineated on two maps in the Land Office, with the name of Smothers written upon the maps. The facts in evidence, with these maps, as stated by the witness, we believe show a state of facts which requires of those wishing to locate land an examination into the facts connected with said maps, and failing to do so, they cannot be held to be innocent purchasers. But we are not bound to rely on the records and maps referred to, to bring home to the locator and those claiming under him notice of the rights of Smothers. The testimony shows that the land is a noted place, known by a name by the entire community, and that it was well and notoriously known as the headright of Archibald Smothers. Of this it is understood the locator was bound to take notice, and failing to do so, he would be bound by whatever rights Smothers had on the land. But the notice does not stop here. It is shown by the testimony of H. A. Greenwood that at the time Threadgill, the agent of the locator, was going to make said location, that the witness informed Threadgill that the land in controversy, or rather the "cane patch," was the headright of Smothers, and advised him not to make the location. This was direct and positive notice of the fact of one claiming to know, and no vague rumor or speculation of a stranger, and if this is shown not to be sufficient, his reply shows beyond a question that he not only had notice of the claim of Smothers, but that he had been examining into the matter, and was willing to gamble on his own judgment

as to the validity of Smothers' title. His reply was "that A. Smothers' claim to the land had not been perfected, and the land was liable to location." From this state of facts, the evidence fully warranted the determining that the patentee, James, had notice of Smothers' claim and grant, or that he had such notice as would preclude his claiming as an innocent purchaser. (Crosby v. Houston, 4 Tex., 23.) This court held that notice to the party would supply the want of the proof of registration required by 40th section of act of December, 1836. (Lewis v. Dart, 10 Tex., 338.) The court says that it is well settled that to make a valid location or entry it should be attended with such circumstances and facts of notoriety as would furnish a person of ordinary diligence notice that the land had been located. (Guilbeau v. Mays, 15 Tex., 416.)

He had notice such as would preclude him from claiming as an innocent purchaser. (Crosby v. Houston, 4 Tex., 23.)

The court held that notice to the party would supply the want of proof and registration as required by 40th section of the act of December, 1836. (Lewis v. Dart, 10 Tex., 398.)

In the examination of the rulings of the court on the evidence, we should keep in mind the issue before the jury for their determination. The validity of the grant to A. Smothers is not questioned. The patent to James, under which the plaintiff claims, is sufficient to pass the title the State then had in the land, but being previously granted by a valid grant, nothing passed by the patent, unless the patentee can claim as an innocent purchaser having no legal and proper notice of the previous grant.

The only question then was that of notice. The journals of the Senate should not have been received in evidence for various reasons, one of which was sufficient. It was the acts of third parties, of which the parties in interest had no notice. That it was not the best testimony as to the time of filing the grant in the land office. The testimony of the officers of the General Land Office was testimony of a higher grade, and was before the court by the action of plaintiff, and established the fact that the

Wilson v. Williams.

grant was in the land office previous to the examination of the committee of the Senate.

The same remarks may be applied to the depositions of Phillips and the ruling of the court was correct in rejecting the testimony.

The certificate should have been rejected, for the reason that it was not responsive to the issue. Field notes did not respond to the issue presented. The testimony of Greenwood was properly rejected, for the reasons that the declaration of Smothers, offered to be proved, was not pertinent, and was made after the location of James, and was the declaration of a third party. (See Luter v. Rose, 20 Tex. R.)

The instructions of the court presented clearly and correctly the law, and it was not error to refuse the charge asked for by plaintiff. We can find no error in the decree of the court. The general denial was filed, also a disclaimer to all the land sued for except so much as was covered by the Smothers grant. The last instruction of the court shows that said disclaimer was considered on the trial, as that instruction seems to be based upon said disclaimer.

WHEELER J.—The defendant's was the elder and superior title, and must prevail, unless on the principle of the decision in Guilbeau v. Mays (15 Tex., 410,) the plaintiff's right is preferred as having been acquired without notice of the elder grant. The decision below turned upon the question of notice, and this appeal brings under revision the rulings of the court excluding evidence offered by the plaintiff to rebut the evidence of notice introduced by the defendant.

The evidence of notice relied on by the defendant, was the testimony of witnesses to the effect, that it was a matter of notoriety in the neighborhood of the land in question, that it was the headright of Smothers, under whom the defendant claims, long before the plaintiff's title had its inception; that the plaintiff's vendor had actual notice of the existence of this claim; the field-notes of the plaintiff's survey reciting that it is "a re-survey of a third of a league of land surveyed for Archibald Smothers, A. D. 1838;"

and the depositions of the Commissioner and Chief Clerk of the Land Office, to the effect that the original title of Smothers was an archive of that office prior to the 16th of November, 1848, the date of the plaintiff's patent.

It cannot be doubted that this evidence was amply sufficient to entitle the defendant to a verdict, as well upon the doctrines propounded by the court in Guilbeau v. Mays (15 Tex. R., 416, *et seq.*) as upon the authority of Byrne v. Fagan, (16 Tex. R., 391;) for upon the authority of the latter case the depositions of the officers of the Land Office authorized the presumption that the original title was deposited in that office in due time, and that, of itself, was sufficient notice to the subsequent locator.

The deposition of the witness, Phillips, was offered by the plaintiff, to rebut this evidence of notice, by proving that, in point of fact, the original title of Smothers was not deposited in the Land Office until a time subsequent to the date of the plaintiff's patent. The deposition certainly tended strongly to that conclusion. But it was excluded on the ground that the witness was incompetent to testify to the facts to which he deposed, because he was not an officer in the Land Office. In this we think there was error. The deposition was not offered for the purpose of showing what appeared by the records of that office. Its effect was not to contradict the record. The Commissioner states in his deposition, that there is nothing of record in the office showing when the title was in fact deposited; but he concludes it must have been prior to the 10th of December, 1848. It was certainly permissible to show by any witness who possessed competent knowledge of the fact when the title was so deposited, in order to rebut this evidence, and to repel the presumption arising from the fact that the title is found in the Land Office, that it was deposited there in due time. The portion of the deposition which relates to the examination the witness made in the Land Office, and what was shown by the records of that office, was justly liable to the objection that the keepers of the records were the proper persons to depose to those facts, and not the witness, who could not be supposed to have equal means of information upon that subject. So much of the deposition might have been suppressed upon a motion to that effect. But

the objection to a part of the deposition did not authorize the exclusion of the whole. The report offered in connection with the deposition was evidence, only in so far as the facts stated therein were deposed to by the witness and thus made a part of his deposition.

We think the court also erroneously excluded the certificate and field notes of the survey made thereon of a third of a league of land for Smothers in 1838. It appears that this survey was made to include the same land embraced in the title to a fourth of a league previously issued to Smothers, and now claimed by the defendant; but as the certificate was not recommended by the board of land commissioners, it was never perfected into a patent, but became worthless. After the evidence of notice introduced by the defendant, this evidence became very material to the plaintiff for the purpose of showing to what the notice had reference, whether to the original title, which was a valid title, or to the certificate and survey which were invalid, and interposed no legal obstacle to the appropriation of the land by the certificate upon which the plaintiff's title was obtained. It was admissible as rebutting evidence, tending to show that the claim of which the subsequent locator had notice, was not the title to the fourth of a league, but the unrecommended certificate and survey of a third of a league, and thus to rebut the presumption of notice. If it be shown that the locator knew of the existence of the elder title, it is immaterial in what manner he obtained the information; he acquired no right by his location as against the holder of that title. Or if the title was deposited in the General Land Office prior to the acquisition of his right, that is such constructive notice as cannot be rebutted. It raises a conclusive legal presumption of notice. (Byrne v. Fagan, 16 Tex. R., cited *supra*.) But if the locator had no other notice than the notoriety of the claim in the neighborhood, as the headright of Smothers, and the statements to that effect of third persons, and the third of a league survey of 1838, and it be shown that on inquiry conducted in the usual course of such investigations, he would not have obtained a knowledge of the existence of the title, but would have found that the land had been surveyed upon the head right certificate of Smothers, which had not been

5Y

recommended, it cannot be doubted that the presumption of notice of the elder title would be rebutted. Indeed, it has been said, it will be a sufficient answer in all cases to the allegation of notice, to show that the party to be affected by it could not have obtained the necessary information by an investigation conducted in the usual course of business, (10 Watts, 26.) And even where circumstances are brought home to the knowledge of the party, which would have been sufficient in themselves to put him on inquiry and thus amount to notice, he will be entitled to rebut the presumption of notice, which would otherwise arise, by showing the existence of other attendant circumstances of a nature to satisfy the mind that further inquiry was unnecessary. (8 N. Hamp., 264; and see 2 L. Ca. in Eq., Part 1; notes to Leneve v. Leneve; Wethered v. Boon, 17 Tex. R., 143.) These references will suffice to show that the evidence in question was improperly excluded.

We think the proposed testimony of the witness Greenwood as to the declarations of Wm. Smothers was properly excluded. (Luter v. Rose, 20 Tex. R., 639.) But, for the errors we have indicated, the judgment must be reversed, and the cause remanded.

Reversed and remanded.