THE TEX. & PAC. R'Y CO. v. A. J. HARDIN.

(Case No. 1721.)

1. CONTINUANCE — DILIGENCE.— A statement that a party has made an effort to
get the depositions of certain witnesses, by making out interrogatories,
having them crossed by opposing counsel, who have agreed to waive com-
missions and consented that the depositions might be taken before any offi-
cer legally qualified, is not stating that due diligence contemplated by the
law. R. S., art. 2219 *et seq.;* citing McMahan *v.* Busby, 29 Tex., 194.

2. SAME.— An application for continuance, showing that the means given by
law to procure testimony has not been used, is addressed to the discretion
of the trial judge, and, in the absence of some abuse of that discretion, this
court will not reverse a judgment because of a failure of the lower court
to grant a continuance.

3. SAME — REQUISITES.— Such application should clearly and fully set out the
grounds for a continuance, as to whom the interrogatories were sent, the
substance of the material testimony not obtainable then, the efforts to as-
certain the whereabouts of witnesses, that their evidence will be at hand at
the next term of the court, and other like facts explaining fully the various
things done constituting diligence.

4. SAME — CASES CITED AND APPROVED.— Trammell *v.* Pilgrim, 20 Tex., 160;
McMahan *v.* Busby, 29 Tex., 195; Baldessore *v.* Stephanes, 27 Tex., 455;
Byne *v.* Jackson, 25 Tex., 96; Townsend *v.* State, 41 Tex., 135; Chilson *v.*
Reeves, 29 Tex., 279, cited and approved.

5. SAME — PRACTICE IN SUPREME COURT — BILL OF EXCEPTIONS.— A bill of exceptions to the action of the court below in overruling a motion for continuance should fully state the grounds upon which its action was based.
6. CHARGE OF THE COURT.— Where the court charged the jury as to whether an injury resulted from defective cross-ties or rails, and also explained what character of defects would impose liability on the company, an instruction to the effect that, if the jury should find that such defects did in fact exist, which were known or might have been known to the company, they should find for plaintiff, if his injuries resulted therefrom, was not error, and is not a charge upon the weight of evidence.
7. CONTINUANCE.— See opinion for a statement of diligence in procuring absent testimony, which the court below might well have regarded as insufficient.

APPEAL from Kaufman.  Tried below before the Hon. Green J. Clark.

On March 28, 1884, plaintiff (appellee) filed his petition in the Kaufman district court, and therein alleged in substance that on January 15, 1884, he and his wife, S. E. Hardin, took passage on one of defendant's trains at Terrell to go to some point west on defendant's line; that about 3 o'clock in the morning, in Parker county, the train met with an accident and was derailed, whereby plaintiff was seriously injured; that the accident was due to the defective condition of the track, and to the negligence and unskilfulness of the men in charge of the train; that by reason thereof, plaintiff's left arm was broken and lacerated in two places, between the wrist and elbow; his little finger of right hand broken; his left knee hurt and bruised, and his head and face cut, gashed and greatly disfigured, and his left eye cut and punched; that the injuries are permanent, and will give him continuous physical and mental pain and anguish, and impair his ability to labor, etc.

On the same day plaintiff, joined by his wife, S. E. Hardin, filed their joint petition in the district court against defendant to recover damages for personal injuries received by the wife in the wreck, and therein alleged in substance that the wreck was due to the condition of the road-bed, and the negligence and unskilfulness of the servants in charge of the train, whereby the wife sustained serious and permanent injury to her spine and hips, producing paralysis.

On May 15, 1884, defendant filed its answer to these petitions, and, after pleading the general denial, pleaded specially in substance, that the action in question resulted from the breaking of an iron rail through a latent flaw therein, which could not have been detected by the exercise of the utmost care and diligence usually and properly used in the inspection of railroads; and that if plaintiff's injuries should prove permanent, it would be in consequence of his neglect in caring for the same.

On June 24th, on motion of defendant, both suits were consolidated, and plaintiff amended his petition, and, leaving out his wife, prayed for damages he had sustained by reason of the personal injuries to his wife. On June 25th, the cause was called for trial, the plaintiff announced ready, but the defendant was not ready and filed its application for continuance on the ground that twelve material witnesses were absent. This application was overruled, the defendant saving an exception thereto. The cause proceeded, and verdict in plaintiff's favor for $17,500, viz.: $10,000 personal injuries received by plaintiff, $7,500 by his wife; upon which the judgment appealed from was rendered.

*Tooke & Henry*, for appellant, on the right to have a continuance, cited: Art. 1277, R. S.; Tex. Transp. Co. *v.* Hyatt & Henning, 54 Tex., 213; Hipp *v.* Bissell, 3 Tex., 18; Payne *v.* Cox, 13 Tex., 480; Jordan *v.* Robson, 27 Tex., 612.

*Manion & Adams* and *Word & Charlton*, for appellee, on the continuance, cited: Texas Practice (Sayles' 2d ed.), §§ 539 and 541; Townsend *v.* State, 41 Tex., 135; 36 Tex., 107; 35 Tex., 175; McMahan *v.* Busby, 29 Tex., 194; 27 Tex., 455; Byne *v.* Jackson, 25 Tex., 96; Trammell *v.* Pilgrim, 20 Tex., 159; Hensley *v.* Lytle, 5 Tex., 499; Johnson *v.* Evans, 15 Tex., 40; Lewis *v.* Williams, id., 49; 11 Tex., 85; 25 Tex. Sup., 36; 23 Tex., 86.

Stayton, Associate Justice.— Application for a continuance was based on the absence of the testimony of certain witnesses who were named; and it shows that the appellant had made an effort to get their depositions by making out interrogatories and sending them to counsel for appellee, who promptly crossed them, and made an agreement waiving commissions and consenting that the depositions might be taken by any officer authorized to take depositions.

This was not the use of such means as the law furnishes to procure testimony. Arts. 2219, 2225, 2227, 2228, R. S., provide a means by which witnesses may be compelled to give their testimony by deposition, and one who fails to use such means cannot be said to have used due diligence. McMahan *v.* Busby, 29 Tex., 194; Hensley *v.* Lytle, 5 Tex., 499.

An application which shows that the means given by the law to procure testimony have not been used is addressed to the discretion of the trial court, and unless it clearly appears that such discretion, which is not an arbitrary one, has been abused, this court will not

reverse a judgment because the court below overruled a motion for a continuance.

The application states that the interrogatories and agreement to take the depositions of the witnesses Bixler, Castello, Gibson, Armstrong, Williams and Dillon, were sent to a responsible and reliable person in Howard county, Texas, where those witnesses were said to live, that they might be taken by an authorized officer. There is no statement that the interrogatories were ever delivered to any officer authorized to take the depositions, or that any step was taken in reference thereto by the person to whom the interrogatories and agreement were sent. It is not shown that the evidence of the witnesses would have tended to prove any of the defenses set up in the answer, further than is so shown by the general averment that their testimony is material; nor is it shown that the appellant expected to have their testimony at the next term of the court.

It is not shown that the witnesses actually resided in Howard county, nor that they lived there when the interrogatories and agreement were forwarded and had since removed, and that thereby the appellant had been unable to ascertain their residences and procure their testimony. Such facts should have been shown in an application addressed to the discretion of the court. Trammell v. Pilgrim, 20 Tex., 160; McMahan v. Busby, 29 Tex., 195; Baldessore v. Stephanes, 27 Tex., 455; Byne v. Jackson, 25 Tex., 96; Townsend v. State, 41 Tex., 135; Chilson v. Reeves, 29 Tex., 279.

The interrogatories to the witnesses Jackson and Allen, with the agreement to take their depositions without commission, were sent to the clerk of the district court for Tarrant county, where the witnesses resided, on or about May 3, 1884; and the application states that soon after the clerk received the interrogatories and agreement, he notified appellant's counsel that Allen had gone to Sedalia, Missouri, but promised to take the deposition of Jackson.

The statement as to what occurred in reference to getting the testimony of Jackson after the papers went into the hands of the clerk, as made in the application, is correctly set out in brief of counsel for appellant as follows:

"That the said Hartsfield, district clerk, as aforesaid, advised defendant's said attorneys that he would take the depositions of the said Dr. Jackson as soon as he returned to the city of Fort Worth, which he thought and understood would be about June 1, 1884, and defendant's attorneys wrote him to take the same as soon as Jackson returned. That on or about June 18, 1884, defendant's attorneys, learning that the depositions of the said Jackson had not been

taken, wired him to come to Dallas and see them in respect thereto. That said Jackson obeyed said message and went to Dallas, and by defendant's attorneys' advice, went on to Terrell to visit plaintiff and examine his arm, hand and injuries. That said Jackson and Allen, as physicians and surgeons, had treated plaintiff and his wife for said injuries immediately after they were sustained, and for some time thereafter. That defendant's attorneys notified said Jackson that this cause was set for trial on the 24th day of this month, and instructed and requested him to attend in person as a witness for defendant herein, and said Jackson promised so to do. That on the evening of Saturday, June 21, 1884, defendant's said attorneys, in order that said Jackson might not fail to attend as such witness on the trial of this cause, sent him another telegraphic dispatch to be present on June 24, 1884, the day this cause was set for trial. That in obedience to said dispatch, said Jackson, on yesterday, the 24th of June, came as far as Terrell with the view of attending this court as a witness in this cause. From that point he notified defendant's claim agent, J. T. Brown, that he was sick, suffering from dysentery. Defendant's said agent, Brown, then notified him to come here to-day so as to be present at the trial hereof, but thereafter said Brown was notified by telephone that said Jackson had grown worse with his said ailment and had returned to Fort Worth for medical treatment."

On this state of facts the court below may have held that the appellant relied on having the witness present at the trial, and, therefore, did not use such diligence to get his deposition as it might have used. If so, we cannot say that such ruling, under the facts, was erroneous.

If the clerk of the district court for Tarrant county had been clothed with such powers as the articles of the statute before referred to would have given to him, had the statutory method of taking depositions been pursued, it may be, and is most likely, true, that the deposition of the witness would have been taken.

The witness Jackson is shown to have been in charge of the appellant's hospital at Fort Worth, and over him the appellant seems to have exercised such control as enabled it to call him to Dallas, to send him to Terrell, and, but for his indisposition, to have secured his attendance on the trial; and the court below may have held that the exercise of such control as the appellant had over the witness would have enabled it to get his deposition. The appellant knew that his deposition had not been taken on June 18th; that the cause had been set for trial on the 24th; yet no effort seems to have been made between these dates to get his deposition.

After appellant's counsel were notified that the witness Allen had gone to Sedalia, Missouri, other interrogatories were made out to him, and as early as May 12, 1884, these were crossed by counsel for appellee, and an agreement made that the depositions of the witness might be taken without commission by any qualified officer. These were at once sent to Sedalia, Missouri, to have the deposition of the witness taken. To whom these papers were sent does not appear; that any further step was taken to procure his testimony does not appear; and besides, the application was wanting in these matters referred to, in connection with the effort to get the testimony of witnesses from Howard county.

Interrogatories and agreement to take without commission the depositions of the witnesses Foule and Bogert were sent to the clerk of the district court for Tarrant county May 3, 1884. These were received by the clerk, who promised to take the depositions of the witnesses as soon as he could do so, but he afterwards informed counsel for appellant that he was unable to find the witnesses, but would endeavor to do so; whereupon counsel for appellant more than once, by letter, requested him to take the depositions if he could. The application nowhere stated that the witnesses resided in Tarrant county, but only that counsel, at the time the interrogatories were made out, heard reports that they there resided. When notified that they could not be found, may it not have been the duty of the appellant to make some inquiry as to the whereabouts of the witnesses? Was a request to the clerk to continue his search enough? The court below may have thought not, and if so, we are not prepared to say that this was wrong. The application is also wanting in statements heretofore referred to.

Interrogatories and agreement to take depositions without commission were sent to Parker county and were placed in the hands of a proper officer, who took and returned the depositions of five of the witnesses named, and their evidence was used on the trial, but the officer made known the fact that he did not take the answers of the other two because they had left.

When the depositions taken were filed does not appear; but it does appear that, on 30th May, 1884, the cause was set for trial on fifth day of the first week of the court, and that on a jury being demanded by the appellee, the cause on the same day was reset for the second day of the fifth week of the court. It is not shown that any effort was made to ascertain where the witnesses were, after the depositions of the others were returned, and the court below may have thought that by the exercise of proper diligence that fact might have been ascertained and their testimony obtained in time

for the trial. The application, in so far as based on the want of the testimony of these two witnesses, is also defective in matters heretofore referred to.

The bill of exceptions, taken to the action of the court in overruling the motion for a continuance, does not in any respect inform us of the grounds on which the action of the court below was based, which is the leading object and purpose of a bill of exceptions in such case, and we might decline to examine an assignment based on an order overruling a motion for a continuance, when no proper bill of exceptions is found in the record. McMahan *v.* Busby, 29 Tex., 195; Harrison *v.* Cotton, 25 Tex., 54; Campion *v.* Angier, 16 Tex., 93.

We have, however, carefully examined the application for a continuance, and although not set out in the bill of exceptions, there are many reasons why the court did not err in refusing the continuance, some of which we have pointed out.

The jury was carefully instructed as to the state of facts which would authorize a verdict for the appellee, and also as to what character of defects in its road would relieve the appellant from liability.

The appellant pleaded that the defect which caused the car to leave the track was a latent defect in a rail which could not have been discovered by the exercise of a high degree of care, and that it was unknown.

The evidence was conflicting, but there was evidence tending to show that the injury did not result from any latent defect in a rail, but that it resulted from the general bad condition of the road, including, among other things, bad iron and rotten ties. There was testimony, however, tending to show that the rail was apparently sound but internally defective, and that the cross-ties were apparently sound.

In this state of facts, and with instructions in effect as before stated, in connection with the rest of the charge the following charge was given:

"If the injuries were caused by some latent defect in the road or in the ties, which were unknown to the defendant, its agents or employes, and which could not be known or discovered by the use of reasonable and careful observation, care and diligence, such as a prudent person should exercise under like circumstances, the jury should find for the defendant. But if the defect in the rail and in the *cross-ties* caused the injuries, and that was known to exist to the defendant, its agents or employees, or could have been known

and discovered by the use of reasonable and careful observation and diligence such as a prudent person, having a due regard for the rights and safety of others, should exercise in like circumstances, the jury should find for the plaintiff."

It is insisted that this was a charge on the weight of evidence, or rather that the charge assumed that there was a defect in the cross-ties.

We do not think that this part of the charge could have been understood by the jury to indicate that in the opinion of the court there was a defect either in the rail or cross-ties, and especially so if the whole charge be considered.

The court had already submitted to the jury whether the injury resulted from defective cross-ties or rail, and had explained what character of defects in either would impose on the appellant liability or relieve it therefrom, and in the charge given could not have been understood to have meant more than that, if the jury found from the evidence that the defects before spoken of in the charge really existed, then they would find for the plaintiff if they believed the injury resulted from defects which were known to the appellant, or which might have been known by the exercise of proper care. Both clauses in this charge left the question of defect, or not, to the jury.

There was no error in the refusal of the court below to give the second charge asked by the appellant, to the effect, if the jury found that the disabled condition of the appellee's arm was due to his own inattention, they might take this into consideration in estimating the damage.

This would have been proper if there had been evidence showing inattention on the part of appellee, but we find no such evidence in the record; hence, the court correctly refused the charge.

When there are no facts on which to base an inquiry, a charge which would raise the inquiry would be misleading.

The testimony of Drs. Jackson and Allen may have been important to the appellant, but the requisite diligence was not used to procure their testimony, and it does not appear in the application for a new trial or elsewhere what their testimony would have been if present.

The verdict and judgment are large, but the injuries received by the appellee and his wife were of a serious character; and there is much in the record evidencing that the verdict was the honest, deliberate finding of the jury on the facts before them. In such case, to set aside their verdict, which the court below has refused to do

would be the exercise of a power which this court has never felt authorized to assume, except in those cases in which it was clear that the verdict was not reasonably well sustained by the facts proved.

The judgment is affirmed.

AFFIRMED.

[Opinion delivered November 11, 1884.]