### ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. GEO. R. BOWLES ET AL.

Decided February 7, 1903.

**1.—Railroads—Negligence—Injury at Crossing.**

It is negligence for a railroad company to leave cars in a street so near a public crossing that a coupling therewith can not be made without forcing them onto the crossing, and to make the coupling without seeing that the crossing is clear.

**2.—Same—Contributory Negligence.**

Facts held to sustain a finding that deceased was not guilty of contributory negligence in attempting to cross a railway track near standing cars which were, in making a coupling, suddenly thrown back upon him, the evidence showing that the moving cars and engine were making little noise and that the standing cars were moved suddenly and with great force.

**3.—Action for Death—Measure of Damages—Future Earnings—Charge.**

Where, in an action for death, the court charged that the measure of damages is such sum as would represent the value of the deceased's future earnings, which plaintiffs, his daughters, had a reasonable expectation he would have contributed to them had he lived, such charge was not subject to the construction that plaintiffs might be allowed all of deceased's future earnings.

**4.—Same—Evidence—Age—Opinion.**

It was competent in such action to prove the age of the deceased by the opinions of a daughter, and of another person who had known him a long time, both testifying as to his appearance, and the daughter testifying that his age was not in the family Bible; and it was not necessary to account for the non-production of the Bible in order to admit such opinion evidence.

**5.—Same—Married Daughters—Expectation of Aid.**

Evidence was admissible in such action to show that one of deceased's daughters had separated from her husband and was, at the time of his death, on her way to him, and that the husband of another daughter was dying of consumption and unable to support her, as bearing on the question of the amount they might reasonably expect that he would have contributed to their support.

**6.—Bill of Exceptions—Continuance.**

The rule which provides that, in the absence of a bill of exceptions, the overruling of an application for continuance will not be reviewed, even though an exception be noted, is not in conflict with the statute, and is adhered to.

**7.—New Trial—Newly Discovered Evidence.**

An application for a new trial on the ground of newly discovered evidence is properly refused where it appears that the same evidence was set up in a motion for continuance which was abandoned before the trial.

Appeal from the District Court of Bowie. Tried below before Hon. J. M. Talbot.

E. B. Perkins and Glass, Estes & King, for appellant.

P. A. Turner, W. H. Arnold, and B. J. Stuart, for appellees.

TEMPLETON, Associate Justice.—On February 15, 1902, H. W. Allen was struck and killed by the cars of the St. Louis Southwestern Railway Company of Texas. He left four married daughters who, in conjunction with their husbands, brought this suit against the company to recover the damages sustained by them on account of the death of their father. A jury awarded them the sum of $5000.

The accident occurred while appellant was crossing Front Street in the city of Texarkana. The street runs east and west. The railroad tracks also run east and west, and are laid in the street. Appellant's depot is situated north and the Union depot south of the tracks, about sixty feet intervening between the two depots. The west end of the Union depot is directly opposite appellant's depot, but the Union depot extends much farther east than appellant's depot. There is a plank walk, ten or twelve feet wide, extending across the street from the west end of the Union depot to appellant's depot. The walk was constructed, originally for convenience of the railway companies in transferring baggage, mail and express from one depot to the other, but it had been long and continuously used by the public generally as a footway with the knowledge and acquiescence of the companies. The street was one of the public streets of the city. The plank walk crossed three railroad tracks. The first track, which was located just south of appellant's depot, was appellant's main track. The second or middle track was appellant's passing track. A short distance east of the depot there was a switch, where the two tracks came together. There was another switch 550 feet west of the plank walk where the tracks came together again. The view in both directions was not obstructed by any change in the course or by any structure. The third track, which was located just north of the Union depot, was a track of the Texas & Pacific Railway Company. The main tracks of that company and of the Iron Mountain company are located south of the Union depot. The depot of the Kansas City Southern Railway Company is located on the north side of Front Street, north of and opposite appellant's depot.

Allen lived at Ashdown, Ark., a station on the Kansas City Southern Railway, about twenty miles north of Texarkana. One of his daughters, Mrs. Spry, lived at Marshall, Texas, a station on the Texas & Pacific Railway south of Texarkana. She desired to go to her father, and notified him to meet her at Texarkana. He went there for that purpose, and, shortly before the Texas & Pacific train on which he expected his daughter was due to arrive, went to the Union depot. He stayed in the sitting room at the east end of the depot a few minutes and then

went out at the south door of said room. He was next seen, so far as the evidence shows, on the plank walk on Front Street. He was traveling north and had about reached appellant's main track. As he was crossing the track some box cars, which were standing just west of the walk, were bumped into by a train of freight cars coming up the track from the west. The collision impelled the cars across the walk. The cars struck Allen, run over him and killed him.

The cars which struck Allen had been placed on the main track a few minutes before the accident occurred. There were four of them, and they were loaded with merchandise. They were stationed just west of the plank walk and scarcely far enough to clear the crossing. There was no engine attached to them. The crew which was handling them, after placing them in the position stated, had pulled their engine back on the passing track and west down said track past the switch west of the depot. There were thirteen cars attached to the engine, ten of which were loaded. The engine was at the west end of the train. After pulling past the said switch the train was backed in on the main track and against the four cars which had been left on the said track. The collision caused the accident. When the car struck Allen the engine was about 625 feet west of the plank walk. The cars were being moved so as to get them in a proper position for unloading.

The evidence is sufficient to warrant the conclusion that the operatives of the train were guilty of negligence in bumping into the standing cars and forcing the same suddenly across the walk without having taken the proper precautions to ascertain whether the way was clear. And we think it is sufficient to justify the finding of the jury that Allen was not guilty of contributory negligence. It is true that his purpose in going across the street was not shown. He does not appear to have had any business at appellant's depot, but he may have been going over to the Kansas City Southern depot to see about tickets or something connected with his trip home. At any rate, no matter what his purpose was, he was on a public street and on a much used walk. He was where he had a right to be, and was neither a trespasser nor a licensee. He must have seen the car he attempted to pass, but, as there was no engine attached, he may reasonably have concluded that he could cross the track in safety. He was justified in assuming that the cars would not be suddenly backed over the crossing without full warning being given. He may not have observed the cars backing up, or if he did, may not have had reason to suppose that they would be hurled against the standing cars in the manner they were. There was evidence tending to show that the moving cars were making little noise and that they were backed into and against the standing cars with great force. If the bell was ringing, about which there is a conflict in the evidence, the engine was at such distance from the walk that Allen may not have heard the same. There was no employe of the company at the crossing to warn him that the coupling was about to be made. The question of negligence or not on the part of Allen was properly left to the decision of the jury and

their finding is conclusive. Railway Co. v. Lee, 70 Texas, 500; Railway Co. v. Boozer, 70 Texas, 536; Railway Co. v. Crosnoe, 72 Texas, 83; Railway Co. v. Lowry, 61 Texas, 154; Railway Co. v. Dyer, 76 Texas, 160; Railway Co. v. Graves, 59 Texas, 332; Railway Co. v. Wilson, 60 Texas, 144. Appellant's assignments of error which urge the contention that the evidence fails to establish liability are overruled.

One paragraph of the court's charge to the jury reads thus: "If you believe and find from the evidence that on the 15th day of February, 1902, defendant had some box cars standing on the north track or track nearest its said depot, and west of said plank crossing, without any engine attached to them, and that while H. W. Allen was walking along said plank crossing going north from the west end of the said Union depot to the depot of defendant, and that just as he got about the middle of the railroad track on which said box cars were standing, the servants of the defendant in charge of one of its engines attached to other freight cars, west of said crossing, backed said freight cars east on the track where said box cars were standing and struck said box cars with great force and suddenly moved said box cars east against the said H. W. Allen and knocked him down and passed over him and killed him as alleged in plaintiffs' petition; and if you further find from the evidence that the servants of defendant in charge of said engine and cars failed to exercise ordinary care to observe the said H. W. Allen in attempting to pass over said railroad track along said plank crossing and to avoid striking and injuring him; and if you find that the placing and leaving of said box cars on the railroad track without an engine attached to them and the striking of them with the other cars and engine as alleged, if so struck, and the failure, if any, on the part of the defendant's said servants to use ordinary care to observe said Allen in attempting to cross said railroad track, was negligence, and that but for such negligence, if any, the said H. W. Allen would not have been struck by the said cars and killed, and if you further find from the evidence that plaintiffs have suffered any pecuniary damages by reason of the said Allen's death, then you will return a verdict for plaintiffs against the defendant for such sum, as actual damages, as the evidence may show them entitled to under the instructions hereinafter given you."

Complaint is made of this paragraph of the charge on the ground that appellant had a right to leave the cars standing on the track and to couple the other cars onto them, and that it was not negligence, in law or in fact, to do so. That appellant had a right to leave the cars on the track and to make the coupling can not be doubted. But, if the cars were left so near the crossing that the necessary coupling could not be made without driving the cars upon and over the crossing, it was negligence to make the coupling without taking the proper precautions to see that the crossing was clear. The position in which the cars were left and the making of the coupling can not be left out of consideration in determining whether there was negligence. The neces-

sity of seeing whether the crossing was clear arose from the fact that the coupling could not be made without forcing the cars over the crossing. The proposition was correctly presented in the charge, and the complaint of appellant is not well taken. It is further urged that the pleadings did not raise the issue in the form it was submitted. The facts were fully stated in the petition, and it was alleged that appellant's servants exercised no care to ascertain whether the crossing was clear before making the coupling. We think the petition fairly raised the issue that was submitted to the jury. The contention of appellant is presented in other forms, but what has been said is sufficient to dispose of the question in all its phases.

Another paragraph of the charge reads thus: "If you find that the plaintiffs are entitled to recover, then you will apportion the sum so found among them in such sums as you may determine each is entitled to receive; and you are instructed that the measure of damages, if plaintiffs are entitled to recover, is such sum as would represent the worth or value of the future earnings of the deceased, Allen, which his daughters, who are plaintiffs herein, had a reasonable expectation he would have contributed to them had he lived, and in determining the amount of damages, if any, sustained by them on account of the death of the said H. W. Allen, you may consider said Allen's capacity for earning money, his age at the date of his death, and the probable expectancy and duration of his life."

Complaint is made of this paragraph of the charge on the ground that the same is misleading, in that it is calculated to cause the jury to believe that they might allow the plaintiffs all of the future earnings of the deceased, and not merely that part of his future earnings which he would have contributed to their support had he lived. It is conceded that the court was attempting to follow the rule laid down in approved cases, and that the charge may be construed as intended by the court, but it is urged that the charge is susceptible of the construction stated above, and that the jury may have so understood it and based their finding upon the entire future earnings of the deceased, and not upon the portion thereof he would have contributed to the plaintiffs. The charge is not capable of such construction without departing from the clear intent and meaning of the language used. The charge informed the jury that the measure of damages was such sum as would represent the present worth or value of the future earnings of the deceased which he would have contributed to the plaintiffs had he lived. The charge can not be construed to mean that the jury was authorized to allow the plaintiffs the entire future earnings of the deceased, regardless of whether he would have contributed his whole earnings to their support, without ignoring the limitation expressed in the charge. The charge being open to but one construction, it can not be held to have been misleading. It stated the true measure of damage in unambiguous language, and no other instruction on that issue was necessary.

The age of the deceased was a material issue. Two witnesses testified

upon that issue. Mrs. Spry, one of his daughters, testified that her father did not know his own age exactly, but from what he had told her regarding his age, he was about 63 years old; that about ten years before he died, he spoke of writing to relatives and learning his exact age, but whether he ever did so, the witness did not know; that his age was not then of record in the family Bible. She gave it as her opinion, judging by her knowledge of him and by what he had told her and by his appearance, that he was 60 to 63 years old at the time of his death. Another witness testified that he had known the deceased a long time, and gave it as his opinion, based on his knowledge of the man and on his appearance, that Allen was between 60 and 65 years old at the time he was killed. Appellant objected to the opinions of these witnesses on the grounds that there was better evidence, and that it was not a matter about which the opinions of witnesses could be received. It is insisted that, in proving age, the record of births in the family Bible is the best evidence. Such record is hearsay, but if it appears to have been properly kept and comes from the right custody, it is admissible because of the necessities of the case. It is not the best evidence, and is not required to be produced or accounted for before other testimony can be introduced. The witnesses who gave their opinions as to the age of the deceased had long been familiar with the deceased and testified fully as to his appearance. We think, under the circumstances shown, that the opinions were properly received.

The plaintiffs were permitted to prove, over objections by defendant, that Mrs. Spry had separated permanently from her husband, and that she, accompanied by her children, was on her way to Ashdown, where she was to live with her father and be supported by him, when he was killed. The plaintiffs were also permitted to show that the husband of Mrs. Westbrook, one of the daughters, was dying with consumption, and was confined to his bed and unable to earn a support for his wife. The objections to all this testimony were properly overruled. Any evidence tending to show the amount which the deceased would have contributed to the support of his daughters was admissible. The testimony which defendant sought to have excluded showed the necessities of Mrs. Spry and Mrs. Westbrook and their reliance on their father for support and their grounds for expecting assistance from him.

As stated above, the jury awarded the plaintiffs the sum of $5000. It was apportioned as follows: to Mrs. Spry, $2000; to Mrs. Westbrook, $1500; to Mrs. Gentry, $1000; to Mrs. Bowles, $500. It is insisted that the verdict is excessive. That this is true as to Mrs. Bowles there can be no doubt. She lived at a distance from her father and was married to a man who is able to care for her and who does care for her. Since her marriage she has received nothing from her father. The necessities of her sisters would have probably consumed all the surplus earnings of the deceased, and no reasonable probability of more than nominal contributions to Mrs. Bowles was shown. There is no doubt that, had Allen not been killed, the other plaintiffs would have received

substantial aid from him. He was bound to them by the closest of ties and had no other claims upon him. He was somewhat aged, but was a stout, robust, healthy man. He was earning about $85 per month. The greater portion of his earnings would have been expended for the support and maintenance of his said three daughters, and his life expectancy was such that we can not say that the jury have overestimated the amount they would have received. Considering his age, the verdict is rather large, but we would not be justified in setting it aside.

One other question remains to be considered. The defendant in the court below presented an application for continuance, which was overruled by the court. The order overruling the application shows that the defendant excepted thereto, but the exception was not preserved by a bill. Appellant attacks the rule which provides that, in the absence of a bill of exceptions, the action of the trial court in overruling applications for continuance will not be revised, and presents an able argument in support of the contention that the rule is in conflict with the statute, and should not be followed. We think, however, that the rule is not in conflict with the statute as contended, and that it is based upon sound reason and is settled by authority. The rule has been applied since the adoption of the present statutes and rules of court. It is supported by an unbroken line of decisions, and the question can not be regarded as an open one. Campion v. Angier, 16 Texas, 93; Harrison v. Cotton, 25 Texas, 54; Morris v. Files, 40 Texas, 379; Railway Co. v. Hardin, 62 Texas, 373; Railway v. Mallon, 65 Texas, 116; Philipowski v. Spencer, 63 Texas, 605; Bonner v. Whitcomb, 80 Texas, 181; Waites v. Osborne, 66 Texas, 649; Railway Co. v. McAlister, 59 Texas, 361; Railway Co. v. Cannon, 29 S. W. Rep., 689; Strain v. Greer County, 19 S. W. Rep., 513; Railway Co. v. Dunn, 17 S. W. Rep., 822.

It is pertinent in this connection to consider one of the grounds of the defendant's motion for a new trial. It was set up in the motion that, subsequent to the trial, the defendant learned, for the first time, that it could prove by one Sullivan that he had seen the family Bible of the deceased, and that the record of births therein contained showed that Allen was born in October, 1835, which would make him over 66 years old at the time of his death. One ground of the motion for continuance was that the defendant desired time to procure the testimony of the said Sullivan, by whom it expected to prove that Allen was 67 years old when he was killed. In view of the application, the testimony can not be held to be newly discovered. It appears from the application that the defendant knew, at that time, that Sullivan was an important witness on the issue relating to the age of the deceased, and it is not contended, in the motion for a new trial, that he knew any fact relating to any other issue. Under these circumstances, the defendant could not abandon its application and raise the question, after trial, in the form it is presented.

The judgment is excessive to the extent of the sum awarded to Mrs. Bowles, but we find no other error in the record. The judgment will

therefore be reformed so as to exclude that sum from the amount recovered by the plaintiffs, and as reformed will be affirmed.

*Reformed and affirmed.*

Writ of error refused.