OLIVIA B. DOWNS, Respondent, v. MISSOURI & KANSAS TELEPHONE CO., Appellant.

Kansas City Court of Appeals, February 5, 1912.

1. NEGLIGENCE: Agreement: Licensee. Two telephone companies and an electric light company each had poles and wires on a certain street corner in a city. The wires of the light company and of one of the telephone companies (the defendant) were strung on the same poles, the telephone wire being underneath. The wire of the other telephone company was on its own poles, but ran beneath the wires

of the other companies. At a point nearby the wire of the defendant telephone company was negligently allowed to sag down and come in contact with the electric light wire and thus carry its voltage. At the corner, the wire of defendant telephone company was allowed negligently to sag down and come in contact with the other telephone company's wire, and thus interfere with the proper operation of that company's service. There was an understanding between all three companies that the servants of each could climb the poles of the other to make repairs. An employee of the other telephone company climbed the pole of the electric light company so as to lift the defendant telephone company's wire off of that of his company. In taking hold of defendant's wire he received the shock of the voltage of the light company's wire and was killed. It was *held*, affirming same case in 145 Mo. App. 173, that deceased was more than a mere licensee, in climbing the electric light company's pole, and that the defendant telephone company was liable.

2. ———: ———: ———: **Evidence: Question for Jury.** Evidence examined and *held* to make a question for the jury as to how deceased came to his death and as to defendant's negligence.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge.

AFFIRMED.

*Battle McCardle, George F. Longan* and *Gleed, Hunt, Palmer & Gleed* for appellants.

(1) In handing defendant's wire deceased was a trespasser, and defendant could be held liable only for willfully injuring him. There is no question of willful injury in this case. Smith v. Packing Co., 82 Mo. App. 9; Sias v. Railway, 179 Mass. 343; New York Co. v. Speicher, 39 Atl. (N. J.) 661. (2) As to the pole on which deceased was working he was a mere licensee, and assumed all risks from injury in using the pole in the condition in which he found it. Moore v. Railway, 84 Mo. 481; Barney v. Railway, 126 Mo. 372; Witte v. Stifel, 126 Mo. 295; Cumberland Co. v. Martin's Admr., 116 Ky. 554; Benson v. Traction Co.,

26 Atl. (Md.) 973. (3) From the facts proved, the jury could not tell what caused deceased's death. The expert witnesses all testified that the death was caused by the current from the light company's wire above him. Any one of three causes of the death was possible. The cause pleaded, and the only one for which defendant could be held liable, is the least probable. Where an injury may have resulted from two or more causes, plaintiff must show with reasonable certainty that the cause for which defendant is liable produced the result. Warner v. Railway, 178 Mo. 134; Smart v. Kansas City, 91 Mo. App. 586; Goronson v. Mfg. Co., 186 Mo. 307; Thornburg v. Mining Co., 126 Mo. App. 660. (4) The court instructed the jury that in estimating the damages they might take into consideration any aggravating circumstances surrounding the death of plaintiff's husband. There were no aggravating circumstances, and plaintiff asked only for actual damages. The instruction was therefore erroneous. Rains v. Railway, 71 Mo. 164; Nichols v. Winfrey, 79 Mo. 544; Stohrer v. Railway, 91 Mo. 509; Calcaterra v. Iovaldi, 123 Mo. App. 347. (5) Defendant's theories of the case were that deceased was a trespasser as to defendant's wire; that he was killed by contact with the light company's wire; and that he was guilty of contributory negligence. The court refused to instruct on these theories of the case, although defendant requested proper instructions on each of them. This was error. Dewitt v. Railway, 50 Mo. 302, 305; Willmott v. Railway, 106 Mo. 535; Kraft v. McBoyd, 32 Mo. App. 399; Bruce v. Wolfe, 102 Mo. App. 384; Hayner v. Churchill, 29 Mo. 676. (6) The first instruction given at plaintiff's request was erroneous in that it did not require the jury to find that deceased was more than a mere licensee on the pole; and in that the jury were requested to find only that defendant knew or should have known that the wire was dangerous, and not that defendant should have known

that the wire was dangerous long enough before the accident occurred to have remedied the defect. This was material in this case, and the failure to include this element in the instruction was error. Goodrich. v. Railroad, 152 Mo. 222; Kelly v. Railroad, 105 Mo. App. 365.

*C. C. Lawson* and *Sangree & Bohling* for respondent.

(1) The deceased had a right on the pole, and was not a trespasser. Downs v. Andrews, 145 Mo. App. 173; Plummer v. Dill, 156 Mass. 426; Elec. L. & P. Co., v. Garden, 78 Fed. Rep. 74; Knowlton v. Edison Light Co., 117 Ia. 451; Ellingsworth v. Electric Light Co., 161 Mass. 583; Perham v. Elec. Co., 33 Ore. 451; Trout v. Gas Light Co., 151 Mo. App. 207; Von Trebra v. Gas Light Co., 209 Mo. 648. The authorities above cited dispose of appellant's second and third points, viz.: First, that the deceased assumed all risks from injury by using the pole; and second, that the jury could not tell what caused the deceased's death. (2) It is not reversible error in the failure of the court to define the words "mitigating or aggravating circumstances," nor in giving said instruction on the measure of damages. Haehl v. Railway, 119 Mo. 325; Browning v. Railway, 124 Mo. 55; Geismann v. Elec. Co., 173 Mo. 654; Barth v. Railroad, 142 Mo. 535; Morgan v. Mulhall, 214 Mo. 451; Parman v. Kansas City, 105 Mo. 693; Ghere v. Zey, 128 Mo. App. 366; Hufford v. Railway, 130 Mo. App. 644.

ELLISON, J.—Plaintiff's action is to recover damages on account of the death of her husband, which she charges to be the result of defendant's negligence. The judgment in the trial court was for her in the sum of five thousand dollars.

Deceased was an employee of the Queen City Telephone Company in Sedalia, and defendant, the Mis-

souri & Kansas Telephone Company, was likewise established there. An electric light company was also in operation, but in the hands of defendant Andrews as receiver. He was discharged as receiver and the case, as to him, was abandoned at the trial. Each of the companies had poles and wires at the corner of a street in the city. The wires of the Queen City Company were on its own poles, but ran beneath the wires of the defendants. The wires of the defendants were both on the poles of the light company at or near that corner. There was evidence tending to show that the wire of the defendant telephone company, through its negligence, had sagged down so as to rest upon the wire of the Queen City Company; and at a short distance down the street the wires of the light company and the defendant telephone company were in contact through their negligence. The wire of the light company was an ordinary telephone wire.

Deceased was what was known as a "trouble man" for the Queen City Company, and he was out to locate a difficulty in the operation of one of its phones. He discovered that the defendant telephone company's wire had dropped down until it was in contact with his company's wire at the corner of the street where the three companies had wires, as we have already stated. He climbed the pole of the electric light company for the purpose of lifting the wire off of that of his company. When he reached a point near the cross-arm he took hold of the defendant telephone company's wire to pull it up. He was immediately killed by electricity. The case was heretofore before this court (145 Mo. App. 173). For reasons there explained the judgment was reversed and the cause remanded for trial, with a suggestion that the petition be amended in certain particulars. These amendments were made. They related chiefly to alleging matter which would show that the deceased, as an employee of the Queen City Company, was more than a mere licensee to whom

defendant owed no duty. The petition, in effect, now alleges, and there was evidence tending to prove, that there was an understanding between the companies that the servants of each could climb the poles of the other in order to remedy any trouble existing with the line of the company so using the other's poles. In our former opinion we held that such arrangement made the deceased more than a licensee, and that the mutual privilege granted by each company to the other, was a valuable consideration for an interchange of use of the other's property and that each owed the other a duty not to injure the servants of the other. The cases were there discussed, and we refer to that report for our present views; and add a case from the Supreme Court not then cited by counsel and a case since decided by the Springfield Court of Appeals: Von Trebra v. Gas Light Co., 209 Mo. 648; Trout v. Gas Light Co., 151 Mo. App. 207. Defendant, however, argues at length that this mutual permission for each to use the other's poles did not include taking hold of its wire in the manner deceased did. We think that would be an unreasonable restriction on the meaning of the evidence. The mutual permission between the companies was a permission ''when necessary to make repairs,'' as one witness explained it. So when deceased saw defendant's line sagged down on his company's line, it was his right under this mutual understanding to go up the pole and take it off.

The theory of plaintiff as to the cause of her husband's death is that the contact further up the street between the electric light company's wire and the defendant telephone company's wire, communicated the high voltage from the former to the latter and that when deceased took hold of the latter's wire to lift it off of the wire of his company, he received the heavy charge of the light company's wire by which he was killed. Defendant pursues a line of suggestion and argument to show that the contact of its wire

with that of the electric light wire up the street was not the cause of deceased's death, but that the cause was deceased's contact with the light company's wire over his head while on the pole, and by a series of questions put to experts, elicited answers to bear out that theory. But the whole evidence on this subject, together with reasonable inference to be drawn therefrom, leaves no doubt that there was sufficient to take the case to the jury on the theory advanced by plaintiff. Indeed, some of the experts stated that the crossing of the wires was the cause of his death.

It is conceded to have been a wet day. Deceased's hat and clothing were damp and so was the pole; and there was evidence tending to prove that deceased, in assuming a position on the light company's pole, brought his head, not touching, but in such close proximity to the light company's wire that he received the shock in that way. It is not worth while to discuss this phase of the case in detail, since, in our opinion, as we have just stated, there was abundant evidence that he was killed by the shock received immediately through the defendant telephone company's wire when he took hold of it to raise it off that of his company, caused by taking the current from the light company's wire up at the point of contact. There is not agreement among the witnesses as to how close deceased's head came to the light company's wire. Some witnesses stated that he might have received the current from that wire without contact, if his head got within two or three inches of it. But others stated that he was not closer than fourteen inches. It was shown that when he took hold of defendant telephone company's wire, with his right hand (which, with his glove, was badly burned), he exclaimed "it's hot", and there appeared a blaze "out of his head"; and an expert stated that there was no voltage in Sedalia that would start a blaze like that without contact.

The evidence and theories for the respective parties, including that of experts, is not easily reconciled, but the question was for the jury to determine.

In the course of defendant's argument the statement is made and repeated that the petition was faulty and that its demurrer thereto should have been sustained. But it must be borne in mind that the demurrer was waived by filing an answer and going to trial. If defendant wished to save the point, it should have stood upon the demurrer. We therefore only need to consider whether the petition is good after verdict. The objection to its sufficiency, like that to the evidence, refers to not averring a mutual privilege to handle the wires of the other company, as distinguished from the poles, if necessary in making repairs. It alleges the privilege in very broad terms, "whenever it became necessary (for employees) in the line of their employment to so use them." We think it sufficient after verdict.

What we have written disposes of most of the objections made to the action of the court on instructions. Four were given for plaintiff and six for the defendant and fourteen refused for the latter. The following for plaintiff on the measure of damages, is attacked for the reason, chiefly, that no direction or explanation is given as to what would constitute mitigating or aggravating circumstances, viz.: "You may allow her such an amount as you may deem fair and just with reference to the necessary injuries resulting to her from the death of her husband, not exceeding five thousand dollars ($5000). And in arriving at the amount you may take into consideration any mitigating or aggravating circumstances . . . ."

The defendant, although asking instructions on all other phases of the case, passed by the question of damages and asked nothing on that subject. Now the later cases in the Supreme Court, beginning with Browning v. Ry. Co., 124 Mo. 55, 71, are to the effect

that if the general nature of the instruction offered by the plaintiff on the measure of damages, is correct, that the duty is upon defendant, if he wishes an explanation or restriction, to ask it. Thus in Barth v. Ry. Co., 142 Mo. 535, 555, the instruction was in these words: That the jury would award plaintiff ''such damage not exceeding five thousand dollars as you may deem fair and just under the evidence in this case with reference to the necessary injury resulting to her from the death of her husband,'' and it was held that where the essential elements of the damages were given in the language of the statute, its generality would not be error. And that the defendant's right, if he wished to exercise it, was to ask instructions pointing out and limiting the damages. But it is said that the instruction in question was not in the language of the statute. We think it was substantially so. We think these, and other cases in plaintiff's brief, show that no error was committed.

Defendant complains that by reason of the refusal of a number of instructions it offered, the court cut out its theory of defense. We have gone over these and find that they were properly refused. Many of them were practically demurrers to the evidence. Several confined deceased's right to the mere act of climbing the pole, without regard to the right to repair or remedy what was wrong after he had climbed it. One denied plaintiff a right to recover if deceased could have made the repair by climbing the pole belonging to his own company, thus leaving out of view plaintiff's theory of mutual permission to climb all the poles. Another, on the subject of the jury being unable, under the evidence, to say where the shock came from that killed deceased, was covered by one given for defendant.

A thorough examination of the record leaves us without authority to interfere, and hence we affirm the judgment. All concur.