SOUTHWESTERN TELEGRAPH & TELEPHONE CO. v. SHIRLEY.

(Court of Civil Appeals of Texas. San Antonio. March 19, 1913. Rehearing Denied April 16, 1913.)

1. REMOVAL OF CAUSES (§ 110*)—AGREEMENT OF PARTIES.

An agreement between the parties that a case should be remanded from a federal court

to which it was removed to the state district court was binding, so as to preclude one of the parties after remand from claiming that the case should have been tried in the federal court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 236; Dec. Dig. § 110.*]

2. REMOVAL OF CAUSES (§ 48*)—GROUNDS OF REMOVAL.

Where the cause of action against two corporations was not separable, the case could not be removed to the federal courts on the ground of diversity of citizenship, though one of the defendants was a foreign corporation, and plaintiff was an alien.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 94; Dec. Dig. § 48.*]

3. APPEAL AND ERROR (§§ 544, 553*)—BILL OF EXCEPTIONS—CONTINUANCE.

Error in denying an application for a continuance will not be reviewed if not preserved in a bill of exceptions; an exception noted in the judgment refusing the continuance not supplying the place of a bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2412–2415, 2417–2420, 2422–2426, 2428, 2478, 2479; Dec. Dig. §§ 544, 553.*]

4. ELECTRICITY (§ 19*)—ACTION FOR INJURIES —SUFFICIENCY OF EVIDENCE.

Evidence in an action for injuries by contact with an electric wire which fell across a large power wire suspended over the street *held* to make it a jury question whether the wire hung down on the street.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

5. APPEAL AND ERROR (§ 882*)—ESTOPPEL TO ALLEGE ERROR.

Appellant cannot object to the submission of an issue which was submitted at his own request.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

6. ELECTRICITY (§ 16*) — INJURIES — NEGLIGENCE.

If an accident occurred by reason of electric wires hanging over a street improperly insulated, it would be immaterial upon the electric company's liability whether they hung there for a short or a long time; the negligence not consisting in the length of time they hung over the street.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

7. ELECTRICITY (§ 19*)—INJURIES—PRESUMPTIONS OF NEGLIGENCE.

Where one is injured by contact with an electric wire suspended over a street, the presence of the wire is a presumption of negligence, placing the burden upon the electric company to free itself from the effect of such presumption.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 11; Dec. Dig. § 19.*]

8. ELECTRICITY (§ 16*)—DUTY OF COMPANY—INSULATION OF WIRES.

It is the duty of an electric company which maintains smaller wires suspended above highly charged electric wires to have the small wires perfectly insulated, so that, should they fall upon the other wires so as to receive a sufficient charge of electricity as to make them dangerous to life, injury would not result.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

9. ELECTRICITY (§ 16*) — INJURIES — PROXIMATE CAUSE.

The proximate cause of an injury from contact with a defectively insulated wire which fell upon a large power wire, and hung over the street charged with electricity from the power wire, was the falling of the uninsulated wire upon the power wire, since the accident would not have occurred without that.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

10. ELECTRICITY (§ 16*)—NEGLIGENCE—CONDITION OF WIRES—CONSTRUCTIVE KNOWLEDGE.

If an electric wire was in such a condition that it would break in the absence of storm or unusual force, the electric company was chargeable with knowledge that it might break, and that its insulation was defective.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

11. DAMAGES (§ 132*)—EXCESSIVE DAMAGES —PERSONAL INJURIES.

A verdict for $23,500 for personal injuries *held* not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Bexar County; Claude V. Birkhead, Judge.

Action by A. L. Shirley against the Southwestern Telegraph & Telephone Company. From a judgment for plaintiff, defendant appeals. Affirmed.

A. P. Wozencraft, of Dallas, E. D. Henry, of San Antonio, W. S. Bramlett, of Dallas, and A. McCloskey, of San Antonio, for appellant. Arnold & Carl, of San Antonio, for appellee.

FLY, C. J. This is a case instituted by appellee to recover damages from appellant and the San Antonio Gas & Electric Company, alleged to have accrued through a shock received from a wire of appellant, which had broken and fallen across a wire of the Gas Company, whereby it had been heavily charged with electricity. There were several grounds of negligence which have been stated with unnecessary elaboration by appellant, as the cause was submitted to the jury on the breaking of a defectively insulated wire, which fell across a heavily electrified wire which charged appellant's wire, and while the same was hanging over the street it came into contact with appellee and injured him. A verdict was instructed for the Gas & Electric Company, and a verdict was returned for appellee against appellant for $23,500, upon which was rendered the judgment from which this appeal is perfected.

Before going into the merits of the case, we will dispose of the seventh assignment of error, which assails the action of the court in overruling an application of the appellant to remove the cause from the state court to the United States District Court. The application was made after appellee had introduced his evidence, and the codefendant of appellant had obtained an instructed verdict in its behalf. The ground of the motion was that appellee was a citizen of Great Britain, and appellant was incorporated under the laws of the state of New York. It is recited in the application that previous to

the trial the cause had been removed by the state to the federal court, and by the latter remanded to the state court. It is unnecessary to state further from the application, which covers 15 pages of the record.

[1] While the cause was in the federal court, the following agreement was made by appellant: "In the above-entitled cause comes the defendant, the Southwestern Telegraph & Telephone Company, and agrees that said cause may be remanded to the thirty-seventh district court of Bexar county, Tex., from whence it was removed by said defendant, and that all costs in the said United States Circuit Court shall be taxed against the said defendant, the Southwestern Telegraph & Telephone Company." It will not be claimed, we suppose, that a corporation created in New York is not bound by its agreements, in the same way a Texas corporation is, and it would seem that the agreement alone should preclude any question of removal to a federal court being raised in this suit. Anderson v. Realty Co., 222 U. S. 164, 32 Sup. Ct. 50, 56 L. Ed. 144.

[2] Waiving the force and effect of the agreement, appellant has no ground upon which to base its assignment of error. The Supreme Court of the United States has effectually disposed of the contention of appellant adversely to it. Whitcomb v. Smithson, 175 U. S. 635, 20 Sup. Ct. 248, 44 L. Ed. 303; Railway Co. v. Thompson, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441, 4 Ann. Cas. 1147. The cause of action against the two companies was not separable, and on that ground the state court had jurisdiction. Railway v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521; Railway v. Schwyhart, 227 U. S. 184, 33 Sup. Ct. 250, 57 L. Ed. ——. In the Thompson Case, cited, it was said: "In other words, the right to remove depended upon the case made in the complaint against both defendants jointly, and that right, in the absence of a showing of fraudulent joinder, did not arise from the failure of the complainant to establish a joint cause of action." It was not pleaded nor proved that the joinder was made for the purpose of defeating federal jurisdiction. The court did not err in retaining jurisdiction of the cause.

We will proceed to dispose first of all the other questions of law which are contained in the third, fourth, and fifth assignments of error; the rest of the assignments being devoted to questions of fact. The court did not err in refusing to charge the jury that there was no evidence of defective insulation of the wire of appellant. As indicated in our conclusions of fact hereinafter found, to have given the charge would have been gross error.

[3] The fourth assignment complains of the refusal of the first application for a continuance. No bill of exceptions was reserved to the action of the court in connection with the continuance, and there is no basis for the assignment. The exception noted in the judgment refusing the continuance will not supply the place of a proper bill of exceptions. Campion v. Angier, 16 Tex. 93; Harrison v. Cotton, 25 Tex. 54; McMahan v. Busby, 29 Tex. 195; Railway v. Hardin, 62 Tex. 367; Philipowski v. Spencer, 63 Tex. 604; Railway v. Mallon, 65 Tex. 115; Waites v. Osborne, 66 Tex. 648, 2 S. W. 665; Simpson v. Texas Tram Co., 51 S. W. 655; Railway v. Klaus, 34 Tex. Civ. App. 492, 79 S. W. 58; City of San Antonio v. Ashton, 135 S. W. 757.

[4] There was evidence sufficient to raise the issue as to whether the wire "hung or dangled down on Corcoran avenue" as submitted by the court, which is attacked in the fifth assignment of error. Guerra, a policeman, swore that it was "hanging there." Pfeufferling swore that it was "hanging down from Duerler's building on the sidewalk"; "the wire didn't touch the ground, but hung within three or four feet of the ground." There was other testimony to the same effect. There was ample evidence to show that the wire was defectively insulated, and that such defective insulation was the proximate cause of the disaster. The third proposition is to the effect that the charge in question is erroneous because it required the jury to find that the wire "hung or dangled" for such length of time before the accident that appellant could have discovered it, and is not supported by the charge which contains no such matter nor anything like unto it. The proposition is not based on the charge of the court.

[5] The issue in question, about which appellant contends there was no evidence, was submitted at the instance and request of appellant, and, if error, it is responsible for it.

[6] If the accident occurred through the negligence of appellant in not having its wires properly insulated, as the evidence showed and the jury found, it would not matter whether it had been hanging over the sidewalk threatening the life of every pedestrian that passed that way for one minute, one hour, or one day. The negligence did not consist in letting it hang for a certain length of time over the sidewalk, but in making it possible for that instrument of death to hang for one instant where it might destroy either the life or the health and usefulness of a human being.

[7] While it has been held that the electrical company is not the insurer of the safety of the passer-by from injuries due to falling or breaking wires, yet they are held to the exercise of care to prevent such accidents; and, where a person using the street or road is injured by contact with an electrical wire lying upon or suspended over such street or road, the presence of such wire raises a presumption of negligence, as would the falling of a wire where a person is injured, and the burden is upon the company owning or maintaining the wire to overcome such presumption. Joyce, Electric Law, §§

606, 607; Downs v. Telephone Co., 161 Mo. App. 274, 143 S. W. 889.

[8] As said by the same author (section 445): "It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and it must exercise the utmost care to maintain them in this condition at such places." He was speaking of highly charged wires at a place where people were expected or called to go, but the same principle is applicable to a company whose wires are not so charged as to be harmful in themselves, when they are suspended above such highly charged wires, and, in case of a break in their wires, the latter may receive the voltage of electricity from the wires with which they may come in contact.

[9] The proximate cause of the injury in this case was the falling of the uninsulated wire, without which the accident could not have occurred. There was no intervening agency to interrupt the responsible connection between the negligent act and the agency, and the character of the accident must have been foreseen by appellant. As quoted by this court in Wehner v. Lagerfelt, 27 Tex. Civ. App. 520, 66 S. W. 221: "If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will not exculpate the other, because it would still be the efficient cause of the injury. The intermediate cause must supersede the original wrongful act or omission, and be sufficient of itself to stand as the cause of the plaintiff's injury, to relieve the original wrongdoer from liability." In this case the accident could not have occurred if the uninsulated wire of appellant had not fallen upon the heavily charged wire of the Gas Company. The electricity would not have been conveyed from the last-mentioned wire but for the fact that appellant's wire broke and fell upon the lower wire, and being uninsulated carried the electricity of the lower wire to the street and into the body of appellee. Such breakage of the wire and its contact with the wires beneath was reasonably to be anticipated by appellant. Gas & Electric Co. v. Speegle, 60 S. W. 884. It may be true that the electricity would not have been carried by appellant's wire if the Gas Company's wire had been properly insulated, but that does not relieve appellant from liability, but merely made the Gas Company a joint tort-feasor with it. The fact that the latter escaped liability does not aid appellant in escaping from the results of its negligence. Electric Light Co. v. Compton, 48 Tex. Civ. App. 586, 107 S. W. 1151; Campbell v. Railway, 243 Mo. 141, 147 S. W. 788; Freeman v. Telephone Co., 160 Mo. App. 271, 142 S. W. 733.

[10] Appellant cannot protect itself from its negligence in failing to properly maintain its property in a safe condition by a plea that it did not have sufficient time in which to ascertain the break of the wire. It should have anticipated that it would break, if it was in such condition as to break in the absence of any storm or other unusual agency, as the wire in question did, and it was charged with knowledge that the insulation of the wire was very defective. As said in Hoover v. Elevated Ry. Co., 159 Mo. App. 416, 140 S. W. 321: "In view of the highly dangerous and subtle nature of electricity, the law imposes upon those who use the public streets in its transmission the duty of exercising the highest degree of care to protect persons rightfully using the streets against injury caused by the escape of such electric currents from their appointed channels, and the rule is well settled that proof of the fact that a pedestrian rightfully using the streets was injured by coming in contact with a broken and fallen wire charged with electricity is prima facie proof of negligence on the part of the owner of such wire, and imposes on the defendant the burden of overcoming the presumption of negligence." Appellee, however, went beyond this rule, and showed that the wire which had fallen was not insulated, and appellant offered no testimony on that subject, nor on any other except the theorizing of experts on the nature of electricity, its tendencies and effects on human beings, wires, and other substances. Although the wire which caused the mischief was traced into its possession, no testimony was offered, as to its condition, nor was it produced in court.

The charge of the court was more onerous on appellee than the law of the case demanded in requiring proof, not only that the wire of appellant charged with electricity had fallen and had shocked appellee, but that the insulation was worn and defective, and that such defective condition was negligence. Appellee met the conditions of the charge, however, and made out the case submitted in the charge.

[11] The evidence was ample to show that the defectively insulated wire of appellant was suspended above the wires of its codefendant, which were heavily charged with electricity, and that said wire broke and fell down and across the wires of the Gas & Electric Company, and hung over the sidewalk on Corcoran avenue, San Antonio, Tex., and that while appellee at night was on his way to the fire station on Market street, where he was employed as "call man," he came in contact with appellant's wire, hanging over the sidewalk, and was rendered unconscious by the electricity with which it was charged. It appeared from the evidence that, when appellee touched the wire, the circuit through his body to the earth was complete, and the charge of electricity went through him. At the time of the accident appellee was a healthy, strong Irishman, 23 years of age. He was doing heavy manual labor as an iron worker. Since the accident he has not been able to work, and is losing flesh. He re-

mained in the hospital to which he was carried from January 9th until February. He was at the time of the trial suffering, as testified by several doctors, with general neurosis, or inflammation of the nerve root, both of the spinal cord and of the brain. He had contracted pupils of the eyes, which was indicative of irritation of the brain centers, and an exaggeration of the reflexes of the legs and arms, indicative of irritation of the spinal nerves. He was treated for months by physicians. There are scars on the right forearm and on the forehead. His muscular control of his right side and leg has been lost, and he has no strength whatever in his right arm. The physicians stated that he was incapable of physical labor, and that his condition was permanent. The right side of the body is incapable of being fully used, and his right leg is smaller than the left. One of the doctors who treated appellee at the hospital and testified for appellant stated that appellee's heart depression was very dangerous, and that he was in a state of semiconsciousness for 24 hours, and he gave him heart stimulant. One physician testified that appellee was partially paralyzed, and might suffer total paralysis.

The verdict is very large, much larger than this court, as an original proposition, might have given, but there is no claim that the argument was improper, or that evidence was introduced tending to produce prejudice or inflame the minds of the jury. Appellee, it is true, was a laborer, but he was just entering vigorous, strong manhood, and was earning $75 a month. He might live 40 or 50 years, and independent of his suffering, which the jury had the right to include in their estimate, he would have earned, even at his wages at time of his injuries, a sum largely in excess of the verdict. He has been transformed by the negligence of appellant from a vigorous, active young man into a nervous wreck, whose future, if the opinions of medical experts are to be credited, is far from bright and hopeful. The verdict is heavy; but, independent of any direct evidence tending to show prejudice and passion, we are unwilling to say that the size of the verdict itself speaks prejudice and passion.

The eighth assignment of error assails the charge of the court on the ground that it permitted a recovery for damages which the jury may have believed established by the testimony, in addition to those alleged in the petition, and that it allowed the jury to return a verdict for double damages. The first objection has no foundation whatever, for the jury were only permitted to give appellee such sum as they believe from the evidence will fairly compensate him for the injuries received, if any, which are alleged in the petition and which they find from the testimony to have been sustained. The charge is plain and absolutely correct. As to the other

ground of objection, it has been often held that charges almost identical with the one criticized did not authorize the jury to allow double damages. Railway v. Waldo, 32 S. W. 783; Railway v. Lynch, 22 Tex. Civ. App. 336, 55 S. W. 389; Traction Co. v. Sanchez, 84 S. W. 849; Railway v. Tisdale, 39 Tex. Civ. App. 372, 87 S. W. 1064.

The judgment is affirmed.